Alabama Precast Products, Inc., referred to hereafter as taxpayer, appeals from a judgment of the Circuit Court of Jefferson County denying its request for writ of mandamus by which it sought a tax refund in the amount of $5,541.38 from the State Revenue Department, referred to hereafter as the State.
The facts of the case were stipulated by the parties and show that the taxpayer manufactures for sale precast channel roof slabs at its plant in Birmingham, Alabama. In 1974 taxpayer entered into a contract with Daniel Construction Company to furnish and install precast channel roof slabs of certain specifications in a building project at Graniteville, South Carolina. The roof slabs were manufactured in Alabama according to contract specifications and installed in the building under construction in South Carolina.
The taxpayer estimated the cost of making the slabs to be $138,544 and paid sales tax to the State in the amount of $5,541.38. Later South Carolina demanded sales tax on the materials used by taxpayer in the performance of its contract in South Carolina. Taxpayer paid the taxes demanded by South Carolina.
Taxpayer subsequently filed a request for a refund from Alabama on the ground that *Page 983 
it should not have to pay sales taxes on the slabs in both states. Alabama and South Carolina do not have a reciprocity agreement whereby credit can be given to a taxpayer by one state for the payment of sales tax on building materials in another state.
The State agreed to refund $4,003.37 of the $5.541.76 paid on the premise that the sales tax was due only on the cost of raw materials used in the manufacture of the slabs. Taxpayer refused to accept anything less than the full amount of the taxes paid and filed a petition for mandamus in the Jefferson County Circuit Court.
Relying on Title 51, Section 786 (2)(j), Code of Alabama 1940 (Recomp. 1958) (Supp. 1973), and State v. Helburn Co., 269 Ala. 164, 111 So.2d 912 (1959), the trial court said:
 "There is no question that the raw materials involved here were used by the Plaintiff in the manufacturing of the roof slabs. The Plaintiff contends, however, that subsection (j) is not applicable because the materials became an ingredient of tangible personal property or products manufactured for sale. To support this contention, the Plaintiff argues that there was a `sale' to another here in that the roof slabs were sold `installed.'
 "The facts here do not support the Plaintiff's contention. Under the evidence here, the Plaintiff had a construction subcontract to furnish and install roof slabs for a construction project. The terms of the subcontract require the Plaintiff to furnish all supervision, labor, materials, tools, equipment, supplies and incidentals necessary to perform and complete the `work' specified. The specified work was to furnish and install approximately 111,900 square feet of 3 1/2" Precast Channel roof slabs.
 "The Court is of the opinion that the requirements of Plaintiff's subcontract with Daniel is not a `sale' within the meaning of the provision of subsection (j) that excepts from the definition of `retail sale', property which enters into and becomes an ingredient or component part of tangible personal property manufactured for `sale.' Under the facts here, the raw materials became an ingredient or component part of tangible personal property that was used by the Plaintiff in the performance of its construction contract. The Plaintiff under these facts became the consumer of the raw materials and as such is subject to the tax."
The writ was denied, and taxpayer appeals.
Before deciding the substantive issue presented by taxpayer, we first consider a procedural issue raised by the State in its brief. Taxpayer's notice of appeal was filed thirty-eight days after entry of the final judgment denying the writ of mandamus. The State says that Title 7, Section 1074, Code of Alabama 1940 (Recomp. 1958), requires that appeals from mandamus proceedings be filed within thirty days of the final judgment and maintains that this statute has not been superseded by the Alabama Rules of Appellate Procedure.
Title 7, Section 1074, supra, provides for an appeal as a matter of right from a final judgment in a mandamus proceeding and, as stated above, prescribes a time limit of thirty days for taking the appeal.
We are of the opinion that Section 1074 has not been superseded by the Alabama Rules of Appellate Procedure in that an appeal from a final judgment in a mandamus proceeding is still a matter of right. However, we do believe that the Alabama Rules of Appellate Procedure have replaced the time limit specified in Title 7, Section 1074 so that the time for appeal is now forty-two days rather than thirty days.
Rule 4 (a)(1), ARAP, provides in part:
 "Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the Supreme Court or to a court of appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from."
Rule 3, ARAP, has recently been amended to extend the time for filing a notice of review by way of certiorari in workmen's *Page 984 
compensation cases from thirty to forty-two days in order to conform the time of appeal in workmen's compensation cases to that in all other appeals. We think the time for filing a notice of appeal from a mandamus proceeding should likewise conform to the forty-two day time limit. Taxpayer's appeal was filed within forty-two days of the final judgment and is timely.
The substantive issue presented for review is whether Title 51, Section 786 (2)(j), supra, imposes a sales tax on raw materials purchased at wholesale which were withdrawn from the manufacturer's stock and used to manufacture precast slabs in order to perform a contract to furnish and install roof slabs on a building being constructed in South Carolina.
Section 786 (2)(j) provides in part as follows:
 ". . . The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, . . except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon."
The taxpayer's position is that the withdrawal of raw materials from stock purchased at wholesale is not, in this instance, a taxable incident. The State maintains that because the raw materials were withdrawn for use by the taxpayer in completion of its contract, the withdrawal was for the "personal and private use" of the taxpayer and is therefore taxable under Section 786 (2)(j).
Before discussing the parties' contentions in detail, we think it helpful to review the facts. The taxpayer bought the materials used to manufacture its precast slabs at wholesale, and thus paid no sales tax on the materials. Taxpayer, as a slab contractor, then entered into a contract with Daniel Construction Company to furnish and install 111,900 square feet of precast channel roof slabs meeting certain specifications. Taxpayer was to provide the labor and equipment necessary to install the slabs in addition to providing the slabs themselves.
In order to fulfill its contract with Daniel, taxpayer withdrew raw materials from its on-hand stock (it also manufactured slabs for sale to purchasers), and manufactured the required precast slabs according to contract specifications; this entire process transpired in Alabama. The slabs were then taken to South Carolina and installed in the project.
It is well settled that the purpose of Section 786 (2)(j) is to reach and tax transactions which could not be taxed because there was a withdrawal, use or consumption by the purchaser at wholesale but no sale by the purchaser to another. State v.Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740 (1962);State v. Helburn Co., supra.
Here there has been no sale to a consumer. Rather, the taxpayer itself, acting as a subcontractor, was the ultimate consumer of the raw materials used in making the slabs for installation in the construction project as required by its contract. This situation falls four-square within our cases which hold where a contractor consumes the materials purchased in carrying out its contract, the contractor is the ultimate consumer of the materials and is liable for the sales tax thereon. Hamm v. Boeing Co., 283 Ala. 310, 216 So.2d 288
(1968), appeal dism. 394 U.S. 320, 89 S.Ct. 1194,22 L.Ed.2d 308 (1969); Associated Contractors v. Hamm, 277 Ala. 500,172 So.2d 385 (1965).
The taxpayer denies that the withdrawal of raw materials was for its "personal and private use" within the meaning of Section 786 (2)(j), relying on State v. T.R. Miller Mill Co.,272 Ala. 135, 130 So.2d 185 (1961). There the taxpayer made lumber both from logs cut from its own land and from logs purchased at wholesale from others. The lumber cut from taxpayer's own logs and that cut from logs bought at wholesale was *Page 985 
commingled and stored on the taxpayer's yards in such a manner that the source of the lumber was indistinguishable. A sales tax was paid when the lumber was sold at retail. The taxpayer would withdraw lumber from its yard at various times to repair or make improvements on its buildings. The supreme court held this withdrawal to be for the taxpayer's personal and private use, and required the taxpayer to pay a sales tax on the lumber so withdrawn and used. Alabama Precast Products maintains that it would owe a tax on materials withdrawn for its own personal and private use only if it used the concrete slabs manufactured from the raw materials in its own buildings.
We do not consider the withdrawal and use of the materials in the case at bar to be for the personal and private use of the taxpayer within the meaning of the T.R. Miller Mill Co.
decision. Rather we rely on Rule W9-011 promulgated by the State of Alabama Department of Revenue on November 13, 1970. That regulation provides in pertinent part:
 "Materials, supplies, equipment or any other tangible personal property which is purchased at wholesale and subsequently withdrawn for use in fulfilling a contract within or without the State are subject to the tax and are to be included in the gross proceeds of sales. The value to be placed upon such goods is the price paid for them by the person withdrawing them."
The taxpayer was informed that this rule was the basis of the State's denial of the requested refund.
In applying Revenue Rule W9-011 to Section 786 (2)(j) we are following the established rule of statutory construction that
 ". . . when a tax statute has been construed by the highest officials charged with the duty of administering the tax laws, such construction should be given favorable consideration by the courts, . . . ." East Brewton Materials, Inc. v. State Department of Revenue, 45 Ala. App. 584, 233 So.2d 751 (1970), 45 Ala. App. at 588, 233 So.2d at 754.
We agree with the State that such a rule is necessary in order to tax materials which otherwise would pass untaxed.
As stated by the trial court in its opinion, the taxpayer withdrew raw materials from its inventory which had been purchased at wholesale and consumed them in carrying out its contract with Daniel Construction Company. The taxable event occurred in Alabama when the raw materials were withdrawn from inventory and used in the manufacture of the slabs which later were installed in a project in South Carolina. We hold, therefore, the taxpayer is liable for sales tax in the amount of $1,538.39 on the raw materials withdrawn from inventory and used to manufacture the slabs in question.
Taxpayer's argument in brief that it sold the slabs to Daniel Construction Company in South Carolina, thereby becoming involved in interstate commerce, is rejected in view of our finding that no sale occurred but instead there was a withdrawal and consumption of raw materials in Alabama in furtherance of a contractual obligation.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.